## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

MATTHEW ROMANO,

                 Plaintiff,                                 **CASE NO.:**

v.

                                                      **JURY TRIAL DEMANDED**

BANK OF AMERICA N.A.,

                 Defendant.

_____/

## COMPLAINT

Plaintiff, Matthew Romano (hereinafter "Mr. Romano" or "Plaintiff"), by and through counsel, brings this action against Defendant, Bank of America, N.A. (hereinafter "Defendant"), and states as follows:

## PRELIMINARY STATEMENT

1.     This is an action for damages brought by an individual consumer due to Defendant's repeated violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq*. ("FCCPA").

## JURISDICTION AND VENUE

2.     Pursuant to 28 U.S.C. § 1331, this Court has federal question jurisdiction over this matter as it arises under the TCPA.

3. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental subject-matter jurisdiction over Plaintiff's claims under the FCCPA, because those claims share a common nucleus of operative facts with Plaintiff's claims arising under federal law.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the action occurred here, Defendant transacts business in this District, and Plaintiff resides here.

## PARTIES

5. Plaintiff, Matthew Romano, is a natural person who is over the age of 18 and a resident of Duval County, Florida.

6. Plaintiff is a "consumer" as that term is defined by Florida Statute § 559.55(8).

7. Defendant, upon information and belief, is a federally chartered bank with its principal place of business in Charlotte, North Carolina.

8. Defendant conducts business in Duval County and throughout the State of Florida and identifies the following as its registered agent with the Florida Department of State, Division of Corporations: CT Corporation System, located at 1200 South Pine Island Rd., Plantation, FL 33324.

9. Defendant is a "creditor" as that term is defined by 15 U.S.C. § 1692a(4) and Fla. Stat. § 559.55(5), and is a "person" as provided by Fla. Stat. § 559.72 and 47 U.S.C. § 227(b)(1).

10. At all times relevant to this action, Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, subrogees, sureties, representatives, and insurers.

## FACTUAL ALLEGATIONS

11.     In 2018, Defendant began calling Plaintiff on his cellular telephone at (904) XXX-6532 in connection with an attempt to collect a debt.

12.     Defendant called Plaintiff's cellular telephone from various phone numbers, including but not limited to (800) 536-1584.

13.     The alleged debt at issue was primarily for personal, family, or household purposes (hereinafter referred to as the "Alleged Debt").

14.     Shortly after the calls began, Plaintiff explained to Defendant that he was unable to pay anything at that time due to personal circumstances.  Plaintiff went on to explain to Defendant that he had undergone major spinal surgery that involved a lengthy recovery, and that one of his young children had become severely ill, requiring nearly constant care and supervision and frequent medical treatment.

15.     Additionally, Plaintiff advised Defendant not to call him again because Plaintiff would contact Defendant as soon as his circumstances changed, referring Defendant to Plaintiff's long history of good credit and timely payments.

16.     Despite this communication, Defendant continued to call Plaintiff on his cellular telephone in connection with the collection of the Alleged Debt.

17.     On multiple occasions, Plaintiff reiterated to Defendant that he was unable to pay the Alleged Debt and repeated his request that Defendant stop calling him.

18.     Notwithstanding Plaintiff's repeated pleas to Defendant for the calls to cease, Defendant continued its campaign of collection calls to Plaintiff on his cellular phone for the purpose of collecting the Alleged Debt.

19.     Additionally, despite Plaintiff explaining to Defendant on several occasions that he did not have the ability to pay due to the personal and financial hardships he was experiencing, Defendant continued its debt collection campaign against Plaintiff by continuing to call him on his cellular phone.

20.     On more than one occasion, Defendant informed Plaintiff that Defendant had to continue to call because the account is past due.

21.     On November 12, 2018, frustrated and angry by Defendant's willful refusal to leave him alone, and annoyed by the fact that Defendant was calling again after Defendant had already called Plaintiff earlier that day, Plaintiff answered Defendant's phone call and stated, "Don't call me!", and hung up.

22.     Yet, later that very same day, Defendant called Plaintiff <u>again</u> on his cellular phone – for the third time that day.

23.     Plaintiff answered that call, which Plaintiff believes was initiated by an automated system, and again stated, "Stop calling me!".  There was no response, and Defendant hung up on Plaintiff.

24.     On November 13, 2018, Defendant called Plaintiff again to collect the Alleged Debt.

25.     During this call, which Defendant represented to Plaintiff was a mere "courtesy call", Defendant again pressured Plaintiff to pay the Alleged Debt.

26.     In response, Plaintiff once again explained that he was unable to pay and advised that he had previously explained this to Defendant on multiple occasions and had asked Defendant repeatedly to stop calling him.

4

27.     In response, Defendant acknowledged that the account notes pertaining to the Alleged Debt reflected recent conversations with Plaintiff, and that Plaintiff had advised Defendant of his current hardship and inability to pay.

28.     Upon hearing this, Plaintiff expressed his frustration to Defendant regarding Defendant's ongoing and harassing collection calls and Defendant's blatant disregard for Plaintiff's repeated pleas to be left alone.

29.     Yet, when Plaintiff subsequently asked Defendant whether Defendant was going to keep calling him, Defendant responded: "Yes, unfortunately, as long as the account is past due, we will continue to call on this account."

30.     True to its stated intention, Defendant willfully disregarded Plaintiff's repeated assertions that he could not pay and requests for the calls to stop and continued its campaign of harassing collection calls to Plaintiff.

31.     On multiple occasions, Plaintiff would answer Defendant's call and after sitting through an automated and/or prerecorded greeting, music, audible tones, and/or pauses, and then Defendant would hang up on Plaintiff.

32.     On multiple occasions, including but not limited to November 19, 2018, Defendant would place a collection call to Plaintiff, hang up on Plaintiff after Plaintiff answered the call, and then proceed to call Plaintiff again later that very same day.

33.     On at least one occasion, Defendant represented to Plaintiff that Defendant "had to" continue to call Plaintiff regarding the Alleged Debt.

34.     Whenever possible, Plaintiff would dutifully answer the phone when Defendant called, and every time Plaintiff spoke to Defendant Plaintiff would explain his current financial hardship and inability to pay, and ask Defendant to stop calling him.

35.     Time and again, Defendant intentionally and willfully disregarded Plaintiff's stated inability to pay and express requests to be left alone by continuing its campaign of collection calls to Plaintiff.

36.      Since Defendant was fully aware of Plaintiff's repeated requests for the calls to stop, the only possible reason why Defendant would continue calling Plaintiff is to harass him into making a payment – despite knowing full well that Plaintiff had no means whatsoever to make a payment.

37.     Defendant has the ability to immediately stop further calls to consumers such as Plaintiff, but Defendant's policy and practice is to continue calling consumers regardless of whether a consumer communicates a desire that Defendant stop calling, and/or whether a consumer makes statements to Defendant indicating the consumer cannot and/or will not pay an alleged debt.

38.     Defendant's policy and practice is that when a consumer communicates his or her desire that Defendant cease calling, but does not do so in writing, Defendant disregards that communication as if it had not occurred and does not record the request in Defendant's records related to the debt that Defendant is seeking to collect from the consumer.

39.     Instead, Defendant continues to barrage the consumer with collection calls until the consumer enters into a payment arrangement with Defendant and/or pays the debt to the satisfaction of Defendant.

40.    In this case, Defendant followed the aforementioned policy and practice when Plaintiff communicated his desire that Defendant stop calling him.

41.    Defendant's continued calls and collection efforts caused Plaintiff emotional distress in the form of frustration, annoyance, aggravation, embarrassment, and anxiety.

42.    Defendant's collection efforts also intruded upon Plaintiff's privacy. In addition, each time Defendant placed a collection call to Plaintiff, Defendant occupied Plaintiff's telephone number such that Plaintiff was unable to receive other phone calls at that telephone number while Defendant was calling him, including important and/or emergency calls related to his seriously ill son.

43.    This was especially upsetting to Plaintiff, as it caused him to fear that his son's school would be unable to reach him if his son collapsed, required medical assistance, or needed to be picked up due to symptoms and/or complications related to his illness.

44.    Additionally, Defendant's telephone calls directly interfered with Plaintiff's right to peacefully enjoy a service that Plaintiff paid for and caused Plaintiff to lose a significant amount of time because Plaintiff had to tend to Defendant's unwanted calls.

## <u>COUNT I</u>
(Violation of the Telephone Consumer Protection Act)

45.    Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 44 above as if fully set forth herein.

46.    The TCPA was enacted to protect individual Americans like Plaintiff from the harm caused by companies like Defendant who subject people to illegal robocalls.

47.     Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; see also *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

48.     Accordingly, the TCPA makes it unlawful to make any non-emergency call to a cellular telephone number using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice, unless the party placing the call has the prior express consent of the called party.  47 U.S.C. § 227(b)(1)(A).

49.     In addition, The TCPA provides, in part:

> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

50.     The Communications Act of 1943, of which the TCPA is a part, defines "willful" as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[], rule or regulation...."  47 U.S.C. § 312(f).

51.     In order to establish a "willful" or "knowing" violation of the TCPA, a plaintiff need not demonstrate that the defendant intended to violate the statute, or that it knew or should have known it was violating the statute.  *See Roylance v. ALG Real Est. Servs., Inc*. 2015 WL 1522244, *9 (N.D. Cal. Mar. 16, 2015); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 WL

1154206, *7 (N.D. Ill. Mar. 19, 2013); *Stewart v. Regent Asset Mgmt. Solutions, Inc.*, 2011 WL 1766018, *7 (N.D. Ga. May 4, 2011).

52.     Instead, a plaintiff need only show that the defendant engaged in a "voluntary act" that violated the TCPA.  *See Bridgeview*, 2013 WL 1154206, at *7; see also *Roylance*, 2015 WL 1522244, at *9 (intentionally making phone calls that violated TCPA, without intent to violate the statute, was sufficient to warrant treble damages).

53.     Defendant is subject to and has violated the provisions of 47 U.S.C. § 227(b)(1)(A).

54.     At all times relevant to the instant action, Plaintiff was the sole subscriber and operator of the cellular phone ending in 6532, which Defendant called in connection with its attempts to collect the Alleged Debt.

55.     At all times relevant to the instant action, Defendant called Plaintiff' on his cellular telephone ending in 6532 using an ATDS or predictive dialer and/or with a prerecorded or artificial voice.

56.     When Defendant answered calls from Defendant, he heard a prerecorded message or artificial voice, or other computerized or artificial sounds.

57.     Defendant was never greeted by a live person on the phone line when he answered Defendant's calls.

58.     Defendant has never placed an emergency call to Plaintiff.

59.     Defendant called Plaintiff using a computer telephony phone system and software that employs automated or predictive technology, despite knowing that Plaintiff asked Defendant to stop calling him.

60.     Defendant lacked consent to call Plaintiff due to the nature of Defendant's telephone dialing system.

61.     Defendant violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by placing non-emergency telephone calls to Plaintiff on his cellular telephone without Plaintiff's prior express consent, or after such consent had been revoked.

62.     Defendant willfully, knowingly, and intentionally made multiple calls to Plaintiff's cellular phone utilizing an ATDS and/or prerecorded voice after Plaintiff clearly instructed Defendant to stop calling Plaintiff and Defendant's calls were unwelcome.

63.     As a result, Defendant's violations of 47 U.S.C. § 227(b)(1)(A) were willfully and knowingly made, and therefore Plaintiff is entitled to treble the damages amount available under 47 U.S.C. § 227(b)(3)(B).

## COUNT II
(Violations of the Florida Consumer Collection Practices Act)

64.     Plaintiff re-alleges and incorporates by reference Paragraphs 1 through 44 above as if fully set forth herein.

65.     The FCCPA was enacted to protect Florida consumers from creditors and debt collectors who use abusive and harassing tactics.

66.     At all times relevant to this action, Defendant is subject to and must abide by Florida law, including the FCCPA, Fla. Stat. § 559.72.

67.     Plaintiff is a natural person who is allegedly obligated to pay a debt, and is a "consumer" as defined in Fla. Stat. § 559.55(8) and is a person whom the act was intended to protect.

68.     Defendant attempted to collect a "debt" within the meaning of FCCPA, Fla. Stat. § 559.55(6), as it was an alleged financial obligation that arose out of a transaction in which the services were primarily for personal, family, or household purposes.

69.     Within the past twenty-four (24) months, Defendant contacted Plaintiff on multiple occasions in connection with the collection of the Alleged Debt.

70.     Defendant violated Fla. Stat. § 559.72(7) by willingly and knowingly communicating with Plaintiff with such frequency as can reasonably be expected to harass Plaintiff, or engaging in other conduct which can reasonably be expected to abuse or harass Plaintiff.

71.     As a result of the above violations of the FCCPA by Defendant and/or its agents, Defendant is liable to Plaintiff for actual damages, statutory damages, and reasonable attorney's fees and costs, pursuant to Fla. Stat. §559.77(2).

72.     Due to the willful, intentional, knowing, malicious, repetitive, and continuous nature of Defendant's abusive conduct toward Plaintiff, Plaintiff is also entitled to an award of punitive damages in accordance with Fla. Stat. §§ 559.77 and 768.72.

## **JURY DEMAND**

Plaintiff is entitled to and hereby respectfully demands a trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Matthew Romano demands judgment against Defendant, Bank of America, N.A., and prays for the following relief, up to the maximum amount allowed by law and the jurisdiction of this Court:

a. Statutory damages of $500 for each and every call Defendant made negligently in violation of the TCPA, pursuant to 47 U.S.C. § 227(b)(3);

b. Statutory damages of $1,500 for each and every call Defendant made knowingly and/or willfully in violation of the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(C);

c. Statutory damages of $1,000, actual damages, punitive damages, plus costs and reasonable attorney's fees pursuant to the FCCPA, Fla. Stat. § 559.77(2);

d. An order enjoining Defendant from placing further telephone calls to Plaintiff's cellular telephone number pursuant to 47 U.S.C. § 227(b)(3); and

e. For such other legal and/or equitable relief as the Court deems appropriate.

Date: 5/24/2019

RESPECTFULLY SUBMITTED,

By: _____
Sharina T. Romano, Esq.
Florida Bar No.: 65501

ROMANO  LAW FIRM, PA
7643 Gate Pkwy, Ste. 104-96
(T) 904.299.2930
(F) 904.800.1110
(E) sromano@romfirm.com
*Counsel for Plaintiff*